UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEVERO GARCIA,<br><br>      Plaintiff,<br><br>  v.<br><br>COSTCO WHOLESALE CORP. and/or COSTCO WHOLESALE and/or COSTCO and/or JOHN DOE I-V (a fictitious name) and/or ROBERT ROE I-V (a fictitious name),<br><br>      Defendants. | Civil Action No. 22-5925 (JXN) (LDW)<br><br><u>OPINION</u> |

**NEALS**, District Judge

  Before the Court is the motion for summary judgment filed by Defendant Costco Wholesale Corporation ("Costco" or "Defendant"), pursuant to Federal Rule of Civil Procedure 56. (ECF No. 59.) Plaintiff Severo Garcia opposed the motion (ECF No. 60); and Defendant replied in further support (ECF No. 62). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1441(a), respectively. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion for summary judgment is **DENIED**.

**I.**  **BACKGROUND AND PROCEDURAL HISTORY**[1]

  On May 26, 2021, Plaintiff Severo Garcia ("Garcia" or "Plaintiff") sustained injuries when a jar of Knorr Caldo de Pollo ("Knorr") seasoning fell on him while shopping at the Costco

---

[1] For the sake of brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.

Business Center in Hackensack, New Jersey. (Defendant's Statement of Facts ("DSOF") ¶ 1; Defendant's Response to Plaintiff's Statement of Material Facts ("DRSOF") ¶ 31.)

As Plaintiff was shopping, he made a turn off the main corridor to a side aisle where the Knorr product was located. (DRSOF ¶ 6.) As Plaintiff walked down the aisle, he observed one of Defendant's employees retrieve a jar of Knorr for a fellow shopper (the "Shopper") from the right side and directly below the top level of the Knorr display (the "Second Layer"). (DSOF ¶¶ 4, 10.)

Between two seconds and one minute after, Plaintiff approached the display to retrieve a jar of Knorr for himself. (DRSOF ¶ 14.) When Plaintiff came up to the display, there were only two jars left in the box from which Defendant's employee had removed the jar of Knorr. (*Id.* ¶ 12.) Plaintiff is unsure if Defendant's employee adjusted the box of the second layer when he retrieved the jar of Knorr for the shopper. (*Id.* ¶ 22.) Plaintiff then followed Defendant's employee and took a jar of Knorr from the same box as Defendant's employee. (*Id.* ¶¶ 13, 14.) Plaintiff had no difficulty pulling out the jar of Knorr. (DSOF ¶ 16.) As Plaintiff retrieved the jar and brought it close to his body, another jar of Knorr fell from the display and struck him over his right eyebrow. (DRSOF ¶ 31.)

Plaintiff is 5 feet 10 inches to 5 feet 11 inches tall. (PSOF ¶ 6.) On the day of the incident, the jars of Knorr were stacked in boxes that were 4 to 5 boxes high, and at least 4 to 5 boxes wide on the second shelf of the aisle. (PSOF ¶ 7.) Each box in the display contained four jars of Knorr, with two jars located at the front and two at the back. (DSOF ¶ 8.) Each jar of Knorr weighed 7.9 pounds and was "approximately a foot in height." (DRSOF ¶ 8.) The top level of the Knorr display held four jars of Knorr, and Plaintiff is unsure if the top level of the Knorr display had anything covering it. (PSOF ¶¶ 15, 27.) Further, while the photograph of the Knorr display produced in discovery (attached as Exhibit E to the Declaration of Michael T. Moran ("Moran Decl.")) is not

2

the exact display that Plaintiff attempted to retrieve the jar from, Plaintiff testified that jars of Knorr were similarly stacked except that the Knorr display was stacked on the second shelf of the aisle, not on the floor as shown in the picture. (PRSOF ¶ 9.) During his deposition, Plaintiff was asked to draw an "X" with a circle around it to indicate in the photograph where the Knorr display was located and which level of the Knorr display Plaintiff removed a jar from at the time of the incident. (PSOF ¶ 9.) As shown below, the Plaintiff made two X markings on the photograph; the X on the right to indicate that the jars were stacked on the second shelf (DRSOF ¶ 7) and the X on the left to indicate where in the display Plaintiff removed the jar of Knorr from. (PSOF ¶ 9.)



3

(Moran Decl., Ex. F (Photograph marked as P-2 at Plaintiff's June 27, 2023, Deposition), ECF No. 59-3.) [2]

On September 1, 2022, Plaintiff commenced this action against Defendant for negligence in the Superior Court of New Jersey, Law Division, Bergen County. (*See* Complaint ("Compl."), ECF No. 1-2.) On September 22, 2022, the Defendant removed this action from the Superior Court of New Jersey to this Court. (*See* Notice of Removal, ECF No. 1.)

On October 17, 2024, Defendant moved for summary judgment. (ECF No. 59.) Plaintiff opposed the motion (ECF No. 60), and Defendant replied in further support (ECF No. 62). This matter is now ripe for consideration.

## II.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that no genuine dispute exists such that summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [her] own

---

[2] It remains disputed whether (1) the top level of the Knorr display with four jars of Knor was only "[t]wo to three inches" over Plaintiff's head and within reaching distance; (2) Plaintiff took one Knor jar from the second level from the top of the display; (3) Plaintiff took the jar of Knorr from the second level from the top of the display, leaving one eight-pound jar to hold four, eight-pound jars on the display's top level; and (4) Plaintiff "could have taken" a jar of Knorr from the "top layer" of the display, or from several other rows to his left or right. (ECF No. 59-2 at *8.)

affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine [dispute] for trial." *Id*. at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are the province of the factfinder. See *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine [dispute] as to any material fact," however, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.

### III.    DISCUSSION[3]

**A. Negligence**

To state a claim for negligence under New Jersey law, a plaintiff must allege "(1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages." *Campbell Soup Supply Co. LLC v. Protenergy Nat. Foods Corp*., Civ. No. 16-684, 2016 WL 7104840, at *2 (D.N.J. Dec. 5, 2016) (citing *Weinberg v. Dinger*, 524 A.2d 366, 373 (N.J. 1987)).

In New Jersey, business owners owe invitees "a duty of reasonable or due care[.]" *Nisivoccia v. Glass Gardens, Inc*., 818 A.2d 314, 316 (N.J. 2003). "Ordinarily an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant

---

[3] As a federal court sitting in diversity, the Court applies New Jersey's substantive law. *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

had actual or constructive knowledge of the dangerous condition that caused the accident." *Id*. When, however, "a dangerous condition is likely to occur as the result of the nature of the business," plaintiffs are relieved of the burden of proving actual or constructive knowledge of the dangerous condition. *Id*. (citing *Bozza v. Vornado, Inc.*, 200 A.2d 777 (N.J. 1964)). Instead, under the "mode-of-operation" rule, the "inference of negligence thus raised shifts the burden to defendant to 'negate the inference by submitting evidence of due care.'" *Id*.

Defendant argues that it is entitled to summary judgment and dismissal of Plaintiff's Complaint as a matter of law because (1) Defendant did not have actual or constructive notice of a dangerous condition on its property; and (2) assuming arguendo that the Court concludes Defendant is not entitled to a notice defense, Defendant did not breach its duty of care when Plaintiff created the open and obvious dangerous condition in question. (*See generally* ECF No. 59-2.) Plaintiff counters that Defendant had actual or constructive notice of the dangerous condition. (ECF No. 60 at *19-20.) Alternatively, Plaintiff argues that the "mode of operation" rule applies and obviates the need for him to prove actual or constructive notice. (*Id*. at 19, 26-30.) Plaintiff also contends that Defendant breached its duty by operating its business in a manner that created a foreseeable risk of injury to Plaintiff and the public. (*Id*. at 21, 23.)

A. **Actual Knowledge or Constructive Notice**

When an invitee is injured on a business owner's property, the business owner "is liable for such injuries if the owner had actual or constructive knowledge of the dangerous condition that caused the accident." *Jeter v. Sam's Club*, 271 A.3d 317, 324 (N.J. 2022). An invitee seeking to hold the business owner accountable for negligence "must prove, as an element of the cause of action," that the business owner had actual or constructive knowledge of the hazard. *Prioleau v. Ky. Fried Chicken, Inc.*, 122 A.3d 328, 335 (N.J. 2015) (quoting *Nisivoccia*, 818 A.2d at 316).

6

Absence of actual or constructive knowledge is "fatal" to a plaintiff's premises liability claim. *Arroyo v. Durling Realty, LLC*, 78 A.3d 584, 586 (N.J. Super. Ct. App. Div. 2013). A business has actual or constructive notice when it actually knows of the dangerous condition. *See Bozza v. Vornado, Inc.*, 42 N.J. 355, 200 A.2d 777, 779 (1964). Constructive notice exists where a condition existed "for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." *Troupe v. Burlington Coat Factory Warehouse Corp.*, 129 A.3d 1111, 1114 (N.J. Super. Ct. App. Div. 2016). While "[c]onstructive notice is usually a question of fact for the jury," summary judgment may be appropriate if "no reasonable juror could conclude otherwise." *Garcia v. Walmart, Inc.*, No. 17-03118, 2021 WL 754006, at *5 (D.N.J. Feb. 26, 2021) (citing *Troupe*, 129 A.3d at 1114).

Plaintiff has the burden to prove defendant had actual or constructive knowledge of the alleged dangerous condition. *See Nisivoccia,* 175 N.J. at 563. Here, Plaintiff argues that Defendant's employee's act of grabbing a jar from the display for a fellow customer moments before he did constitutes actual, or at least constructive, notice. (ECF No. 60 at 20.) A plaintiff need not prove exactly how long the dangerous condition existed if the facts otherwise demonstrate that a defendant had constructive notice. *See McCracken v. Target Corp.*, Civ. No. 09-4816, 2011 WL 1466075, at *4 (D.N.J. Apr. 18, 2011). Furthermore, if a plaintiff presents material facts that suggest the defendant should have been aware of the dangerous condition, summary judgment should be denied, as whether a defendant in fact had constructive notice is a question for the jury. *See Monaco v. Hartz Mountain Corp.*, 840 A.2d 822, 834 (N.J. 2004) (holding that given the property manager's "inspections and the obviousness of the problems . . . the issue of notice is plainly one for the jury"). The Court finds that Plaintiff presents a fact question as to whether the Defendant had notice of a dangerous condition. First, a jury may find that Defendant's employee

should have been aware of the condition, as he was working in that aisle and had assisted a customer in retrieving a jar of Knorr from the same display moments before the incident in which the jar of Knorr fell and injured Plaintiff. A jury could find that there was an issue with the stacking of the display and that if Defendant's employee exercised reasonable care, he could have either assisted Plaintiff with retrieving the jar of Knorr or diverted Plaintiff away from the display to fix the stacking of the products.

### B. Applicability of the Mode of Operation Doctrine

Plaintiff argues the "mode-of-operation" rule should be applied. This rule provides that a plaintiff is relieved of showing actual or constructive notice of a dangerous condition "when a substantial risk of injury is inherent in a business operation's method of doing business." *Nisivoccia*, 175 N.J. at 564, 818 A.2d 314. "[T]he rule is limited to the self-service setting, where customers are independently handling merchandise without the assistance of employees. *Prioleau,* 223 N.J. at 262. A self-service setting includes customers coming into "direct contact with product displays, shelving, packaging, and other aspects of [a] facility that may present a risk." *Id.* The mode of operation rule applies in all "areas *affected by* the business's self-service operations"— not just the precise location of the self-service setting, but rather wherever "there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." *Id*. (emphasis added). The mode of operation rule also "applies whether the injury resulted from employee handling, customer negligence, or the "inherent qualities of the merchandise itself." *Id*. at 263. If the rule is applied, a plaintiff is entitled to an inference of negligence sufficient to survive summary judgment. *Id.* The burden then shifts to the defendant to show it did "all that a reasonably prudent man would do in the light of the risk of injury [the]

8

operation entailed." *Nisivoccia*, 175 N.J. at 564, (quoting *Wollerman v. Grand Union Stores, Inc.*, 47 N.J. 426, 429, 221 A.2d 513 (1966)).

Here, Defendant sells many products in a self-service manner, and customers are permitted to pick up and handle products without employee supervision. Furthermore, because Plaintiff was injured in one of the store aisles, there is geographical proximity to the self-service sale of the Knorr product. Thus, the first and second elements of the mode of operation rule—the self-service nature of the business and geographical proximity—are not at issue. As to the third element, a reasonable factual nexus between the self-service activity and the dangerous condition causing Plaintiff's injury, the Court must consider whether the stacking of Knorr jars, weighing 7.9 pounds and approximately a foot in height, in boxes that were 4 to 5 boxes high, and at least 4 to 5 boxes wide on the second shelf of the aisle, (PSOF ¶ 7) makes it reasonably foreseeable that a jar may fall from the display and onto a customer while handling the product. *See Jeter,* 250 N.J. at 256 (citing *Prioleau,* 223 N.J. at 262). As noted above, the mode of operation rule also "applies whether the injury resulted from employee handling, customer negligence," or the "inherent qualities of the merchandise itself." *Prioleau*, 223 N.J. at 263.

In this case, customers, like Plaintiff, were expected to handle and retrieve products directly from the display without employee assistance, consistent with the self-service model. *Id.* Thus, due to the nature of Defendant's self-service business, a jury could find that it is likely that the heavy jar of Knorr could fall to during employee or customer handling, creating a dangerous condition. *See Nisivoccia*, 175 N.J. at 564. As a result, the Court finds that the mode of operation rule may be applicable.

Defendant relies on *Carroll v. N.J. Transit*, 841 A.2d 465, 470 (N.J. Super. Ct. App. Div. 2004) to assert that the mode of operation doctrine does not apply to this case; however, *Carroll*

is distinguishable on its facts. In *Carroll,* the plaintiff sought to apply the mode of operation to a public entity, upkeeping its premises to prevent slip-and-fall accidents. *Id*. at 470. The court reiterated that the doctrine's application to self-service businesses is a limited exception that applies to businesses where the proprietor could reasonably anticipate that hazardous conditions would regularly arise simply from the operator's method or manner of doing business. *Id*. The court held that the doctrine is inapplicable to a public entity whose liability for maintaining a dangerous condition is rigidly confined to situations where the public entity either created the hazardous condition or was actually or constructively aware of its existence. *Id*.

Here, Plaintiff raises the mode of operation doctrine to apply to a business owner, Costco, who owes invitees, its customers, "a duty of reasonable or due care[.]" *Nisivoccia*, 818 A.2d at 316. Further, it is uncontested that Costco expected customers to interact directly with products generally, which included the precise display and the jars in question. (*See* ECF No. 59-3 at *3; PSOF ¶ 7.) Thus, due to the distinguishing facts, *Carroll* does not govern this case.

As the Court has determined that the mode of operation doctrine applies in this matter, the inference of negligence shifts the burden to the defendant, who can "negate the inference by submitting evidence of due care." *Nisivoccia*, 818 A.2d at 317. Here, Defendant argues that Plaintiff's creation of a dangerous condition precludes recovery because Plaintiff's conduct alone initiated the incident in question. (*See* ECF No. 59-2 at 5.) Defendant further argues that there was an open and obvious dangerous condition because (1) the top level of the Knorr display with four jars of Knor was only "[t]wo to three inches" over Plaintiff's head and within reaching distance; (2) Plaintiff took one Knor jar from the second level from the top of the display; (3) Plaintiff took the jar of Knorr from the second level from the top of the display, leaving one eight-pound jar to hold four, eight-pound jars on the display's top level; and (4) Plaintiff "could have taken" a jar of

Knorr from the "top layer" of the display, or from several other rows to his left or right. (*Id*. at 8.) However, because the mode of operation rule also "applies whether the injury resulted from employee handling, customer negligence," or the "inherent qualities of the merchandise itself," (*Prioleau*, 223 N.J. at 263), Defendant's assertions do not negate the application of the doctrine.

Defendant provides neither specific information regarding its safety procedures nor does it address the actual procedures used on the day of Plaintiff's accident. Nevertheless, "the question of the adequacy of the [business's] efforts to exercise due care is one for the jury." *Gabriel v. Safeway, Inc.*, No. 10-2256, 2011 WL 5864033, at *9 (D.N.J. Nov.21, 2011).

Accordingly, Defendant's motion for summary judgment is denied.

### IV. <u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 59) is **DENIED**. An appropriate Order accompanies this Opinion.

**DATED:** June 30, 2025

HONORABLE JULIEN XAVIER NEALS
United States District Judge